# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**ROBERT SHROUT,**

    **Petitioner,**

**v.**                                                                                 **Civil No. 2:13cv22**
                                                                                     **(Judge Bailey)**

**EVELYN SEIFERT, Warden**

    **Respondent.**

## REPORT & RECOMMENDATION

### *I. INTRODUCTION*

On March 18, 2013, Petitioner filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. After Petitioner paid the filing fee, the Court undertook a preliminary review of the petition and found that summary dismissal was not appropriate. Accordingly, the Court ordered Respondent to answer. On June 11, 2013, Respondent filed a Motion to Dismiss in lieu of an answer, arguing that the petition was untimely filed. On July 2, 2013, a <u>Roseboro</u> Notice was issued, and on July 12, 2013, Petitioner filed a Response in Opposition. It is the Motion To Dismiss and Response which the Court now visits.

### *II. PROCEDURAL HISTORY*

*A. Conviction*

On May 10, 1984, a Monongalia County Grand Jury returned a true bill of indictment charging Petitioner with one count of murder and one count of robbery. The trial court empaneled a jury venire on November 26, 1984. On December 1, 1984, the jury convicted Petitioner of first degree felony murder. Counsel for the defense filed a motion for a new trial on December 10, 1984.

The trial court entered an order denying Petitioner's post-trial motions on December 19, 1984.

On December 10, 1984, counsel for the State filed an information alleging Petitioner had previously been convicted of a felony and was a recidivist. On January 24, 1985, a jury found Petitioner to be the same individual previously convicted of felony sexual abuse on October 20, 1981. Petitioner filed a second motion for a new trial and a notice of intent to appeal on January 31, 1985. That same day, the trial court sentenced Petitioner to life with the possibility of mercy plus five years. Petitioner's effective sentencing date was January 21, 1984. The trial court denied Petitioner's motion for a new trial by order entered February 22, 1985.

*B. Appeal*

Petitioner, by counsel, appealed his conviction to the West Virginia Supreme Court of Appeals on February 17, 1987. The West Virginia Supreme Court summarily rejected Petitioner's petition on July 29, 1987. The petitioner did not pursue a writ of certiorari.

*C. State Post-Conviction Proceedings*

Petitioner filed a *pro se* petition for post-conviction relief with the Circuit Court of Monongalia County on June 9, 1988. The state habeas court convened an evidentiary hearing on November 17, 1989. By final order entered May 30, 1990, the state habeas court denied relief. On July 2, 1990, Petitioner filed a Notice of Appeal. According to Respondent, the Supreme Court summarily denied it. However, Respondent acknowledges that the West Virginia Court has no accessible record of this appeal, and therefore, it is impossible to determine when the appeal was rejected. Respondent provides no explanation how he can be certain that the Supreme Court ever acted on the petition.

Petitioner filed a second petition for state post-conviction relief and DNA testing pursuant

2

to W.Va. Code § 15-2B-4 on June 8, 2007. By mutual agreement, evidence from Petitioner's original criminal case was tested. Sufficient DNA was recovered from the victim's vaginal swab, cigarette butts found in the victim's living room, a sleeping bag, and blood samples found at the crime scene. The testing found that Petitioner could not be excluded from the sperm found on the victim's vaginal swab, or the saliva found on the cigarette butts. The state habeas court convened an evidentiary hearing on May 11 and 14, 2009. By order entered May 31, 2011, the state habeas court denied Petitioner post-conviction relief. Petitioner, by counsel, appealed the court's final order to the West Virginia Supreme Court on June 21, 2011. The Supreme Court denied relief by memorandum opinion filed May 29, 2012. Shrout v. Seifert, 2012 WL 3079142 (SCAWV May 29, 2012).

### D. *Federal Post-Conviction Proceeding*

In support of his federal petition, Petitioner alleges the following grounds for relief:

1. The Circuit Court erred by failing to rule Trooper Inman provided false or misleading testimony causing an innocent man to be incarcerated.

2. The Circuit Court erred in ruling that the Petitioner is not entitled to a new trial in accordance with the Frazier standard.

In what appears to be the brief submitted to the West Virginia Supreme Court in appealing the denial of his second state post-conviction proceeding, the petitioner argues that the circuit court failed to consider that Trooper Inman testified that she conducted the serological testing on all the evidence submitted. While acknowledging that the circuit court did briefly consider Fred Zain's role in testing and analyzing various pieces of evidence which were ultimately presented at trial, Petitioner argues it did not address Troop Inman's assertions that she conducted said testing.

Petitioner further argues that he proved that Trooper Inman offered false testimony.

3

Accordingly, he argues that he is entitled to a new trial because he has established that his case comes within the five rules set forth in State v. Frazier, 162 W.Va. 935, 253 S.E.2d 534 (1979).

### III. ANALYSIS

Petitioner was sentenced on January 31, 1985. His petition for appeal to the West Virginia Supreme Court was rejected on July 29, 1987. He did not file a petition for certiorari in the United States Supreme Court. Therefore his conviction became final October 27, 1987, upon the ninety day expiration for filing a petition for certiorari.[1]

In 1996, the Anti-Terrorism and Effective Death Penalty Act of 1996 ["AEDPA"] was enacted, establishing a one-year limitation period within which to file any federal habeas corpus petition. 28 U.S.C. §2244(d).

Section 2244(d)(1) provides that the period of limitation will begin to run from the latest of four dates:

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

---

[1] The day the event from which the statute of limitations begins to run is excluded in calculating the one year period. Hernandez v. Caldwell, 225 F.3d 435, 439 (4th Cir. 2000).

(D)  the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. §2244(d)(1); Hill v. Braxton, 277 F.3d 701 (4th Cir. 2002); Harris v. Hutchinson, 209 F.3d 325 (4th Cir. 2000).

Because Petitioner's conviction became final before the enactment of the ADEPA in 1996, the one-year limitation period imposed by the Act began to run on April 24, 1996, the effective date of the Act. See Brown v. Angelone, 150 F.3d 370, 375 (4th Cir. 1998). Thus, for Petitioner, the one-year limitation period imposed by § 2244(d) commenced on April 24, 1996. Based solely on his conviction, the last date on which Petitioner could file a timely federal habeas petition under the statute was April 25, 1997.

However, the time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. §2244(d)(2); Id. at 327. "[A]n application is 'properly filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings. These usually prescribe, for example, the form of the document, the time limits upon its delivery, the court and office in which it must be lodged, and the requisite filing fee." Artuz v. Bennett, 531 U.S. 4, 8 (2000).

Petitioner filed his first petition for post-conviction relief on June 9, 1988. By final order entered on May 30, 1990, the state habeas court denied relief. Although Respondent posits that the Supreme Court summarily denied said petition, he provides no proof. Petitioner maintains that he never received a decision and argues that it is still pending. While it would appear unlikely that the appeal is still pending some fifteen years later, absent specific proof that the petition was indeed

5

dismissed, the undersigned believes that this Court must rule that the statute of limitations has remained tolled since June 9, 1988, when the petitioner first filed for state post-conviction relief. Therefore his § 2254 would be timely.

In addition, Respondent"s argument that Petitioner's § 2254 petition is untimely, fails to address the import of the <u>Zain</u> decisions on 28 U.S.C. § 2244(d)(1)(D). As previously noted, this section provides that the limitation period shall run from "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

On June 2, 1993, the Prosecuting Attorney for Kanawha County, William Forbes, filed a petition with the WVSCA requesting the appointment of the circuit judge to conduct an investigation into the policies, procedures and records of the West Virginia State Police Crime Lab's Serology Division, to determine whether habeas corpus relief should be granted to prisoners whose convictions were obtained through the willfully false testimony of Fred Zain.[2] The Honorable James O. Holliday, a retired circuit judge, was appointed to supervise the investigation.

On November 4, 1983, following a five-month investigation, Judge Holliday filed his report with the WVSCA. Judge Holliday made the following findings of fact:

> the acts of misconduct on the part of the same included (1) overstating the strength of results; (2) overstating the frequency of genetic matches on individual pieces of evidence; (3) misrepresenting the frequency of genetic matches on multiple pieces of evidence; (4) reporting that multiple items had been tested, when only a single item had been tested; (5) reporting inconclusive results as conclusive; (6) repeatedly altering laboratory records; (7) grouping

---

[2] This request was made following the 1982 reversal of defendant Glen Dale Woodall's conviction by the WVSCA after DNA testing had conclusively establish that he was not the perpetrator of his crime of conviction. Zain had offered inculpatory evidence at Woodall's trial. Woodall subsequently filed a civil suit against the State of West Virginia. Thereafter, an internal audit of Zain's work was conducted by the state police, which identifies certain improprieties. This investigation when that was then ordered by the WVSCA.

results to create the erroneous impression that genetic markers had been
a change from all samples tested; (8) failing to report conflicting results;
(9) failing to conduct or to report conducting additional testing to resolve
conflicting results; (10) implying a match with the suspect when testing
supported only a match with the victim; and (11) reporting scientifically
impossible or improbable results. Moreover, the [American Society of
Crime Laboratory Directors/Laboratory Accreditation Board [ASCLD]]
concluded that this misconduct was "the result of systematic practice
rather than an occasional inadvertent error." [Footnote omitted].

The overwhelming evidence of a pattern and practice of misconduct by Zain
completely undermines the validity and reliability of any forensic work he
performed or reported during his tenure in the serology department of the
state police crime laboratory. If the information which is now available
concerning the pattern and practice of misconduct by Zain had been available
during the prosecution of cases in which he was involved, the evidence
regarding the results of serological testing would have been deemed inadmissible.

In the Matter of an Investigation of the West Virginia State Police Crime laboratory, Serology Division, 438 S.E.2d 501, 516, 518 (W.Va. 1993) ("Zain I"). Judge Holliday concluded that the findings of fact made in his report constituted newly discovered evidence, and recommended that "as a matter of law, any testimonial or documentary evidence offered by Zain at any time in any criminal prosecution should be deemed invalid, unreliable, and inadmissible in determining whether to award a new trial in a subsequent habeas corpus proceeding." Id. at 520.

On November 10, 1993, the WVSCA issued its opinion in Zain I. The WVSCA found that "Trooper Zain's pattern and practice of misconduct completely undermined the validity and reliability of any forensic work he performed or reported, and thus constitutes newly discovered evidence." Id. at 506. The opinion then sets forth the appropriate standards of review for granting a new trial based on newly discovered evidence, and for granting habeas relief based on the use of falsified evidence. Id. at 504-505.

On May 20, 1994, the WVSCA issued its opinion in In re: An Investigation of West Virginia

7

Stay Police Crime Serology Division, 445 S.E.2d 165 (W.Va. 1994). ("Zain II"). In that proceeding, Judge Holliday was asked to investigate and report on whether other serologists at the State Police Crime Lab had committed acts similar to Zain. Judge Holliday found some evidence of errors by other serologists, but concluded that they were "relatively minor," "occasional" and "not the result of an intentional and systematic subversion of the criminal justice system."Id. at 167. Furthermore, the errors found "did not appear to have 'significantly compromised the prosecutions of the cases in which the other serologists were involved.'" Id. The ASCLD team that conducted the investigation noted that "No instance was found in which an error or omission was likely to have had a significant impact on the conclusion, nor the weight given to the conclusion, on an apparently probative item of evidence." Id. at 167 n.2. On the basis of this report, the WVSCA held that "serology reports prepared by employees of the Serology Division of the West Virginia State Police Crime Laboratory, other than Trooper Zain, are not subject to the invalidation and other structures contained in Zain I." Id. at 168.

On June 16, 2006, the WVSCA issued its opinion in In re: Renewed Investigation of the State Police Crime Laboratory, Serology Division, 633 S.E.2d 762 (W.Va. 2006) ("Zain III"). In that decision, the Court again addressed whether serologists in the State Police Crime Lab, other than Fred Zain, falsified evidence in criminal prosecutions. In the course of this third investigation, two expert witnesses, Mark Stolorow, Executive Director Of Orchid Cellmark Laboratories, and Ronald Linhart, an inspector with the ASCLD, authored a joint report that was filed on December 2, 2004.(hereinafter the"Stolorow/Linhart report"). Id. at 765. The report concluded:

> The errors found by this investigation were frequent, recurring and multifaceted, spanning the spectrum of examiners. However it must be stressed that in only one instance does it appear that erroneous procedures, documentation, reporting or

> testimony led to a false, but non-probative, association between a defendant and
> the biological evidence. (State v. Gray and Finney)... The authors of this report
> do not ascribe any particular motive, intent or design to the scientists in regard
> to the errors made...
>
> Finally, there is a significant qualitative difference between the errors discovered
> during this investigative review and the shocking and egregious misconduct
> documented in Zain I. The intentional and willful malfeasance and reckless
> disregard of both truth and good scientific practice exhibited by Fred Zain
> were not found to exist in these cases among the remaining serologists in the
> laboratory.

Id. at 766. The report described the work product of the other serologists as "potentially unreliable."

Id.

Following receipt of the report from the Honorable Thomas A. Bedell, who succeeded Judge Holliday as special judge assigned to these matters, the WVSCA issued its decision, which held:

> After careful review of the Stolorow/Linhart findings, the special judge's report,
> and the briefs of the prisoners and the State, this Court concluded that there is
> insufficient evidence of intentional misconduct to justify invalidating the work
> of serologists was other than Zain.

Id. at 767. However:

> because of the significant number, frequency, and types of errors which Stolorow
> discovered in the work of the Crime Lab serologists, this Court finds it necessary
> to enact additional safeguards to ensure that prisoners against whom serologists
> offered evidence received a thorough, timely and full review of their challenges to
> the serology evidence

Id. at 769. Thus, the WVSCA set up a special habeas corpus procedure to be utilized by those prisoners against whom a serologists, other than Zain, had offered evidence.

As previously noted, Petitioner filed his second state post-conviction proceeding on June 8, 2007 and appears to have challenged the testimony of Trooper Inman under the Zain III decision. Given that Petitioner was apparently *pro se* when he initiated the second state-post conviction

proceeding, the undersigned believes that his one year limitation period would have begun on that date under 28 U.S.C. § 2244(d)(1)(D) and would have remained tolled until the WVSCA denied him relief by memorandum Opinion filed May 29, 2012. Inasmuch as Petitioner filed his § 2254 petition less than one year after that date, it is timely.

### *IV. CONCLUSION & RECOMMENDATION*

For the foregoing reasons, the undersigned **RECOMMENDS** that Respondent's motion to dismiss (Doc. 15) be **DENIED**, and that Respondent be ordered to answer the merits of the petition.

Within fourteen (14) days after being served with a copy of this Recommendation, any party may filed with the Clerk of the Court written objections identifying the portions of the Recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to The Honorable John Preston Bailey, United States District Judge. Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgement of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985) United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to send a copy of this Order to Petitioner by certified mail, return receipt requested, and all counsel of record.

DATED: 15 November 2013

*John S. Kaull*

JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE